John KIRSCHKE et al., Appellants,

v.

CITY OF HOUSTON, Appellee.

No. 13484.

Court of Civil Appeals of Texas.

Houston.

Dec. 10, 1959.

Rehearing Denied Jan. 7, 1960.

Patterson, McDaniel & Moore, Houston, Bennett B. Patterson, Louis M. Moore, Houston, of counsel, for appellants.

R. H. Burks, City Atty., Homer T. Bouldin, Sr., Asst. City Atty., Houston, for appellee.

WERLEIN, Justice.

This is an appeal from a judgment dismissing appellants' suit upon their failure to amend after the court sustained appellee's special exceptions to their petition.

Appellants sued the City of Houston to recover damages allegedly resulting from the taking, damaging or destroying for or applying to public use their lot in the City of Houston, known as 1214 Chartres Street, without adequate compensation being made, in violation of Article 1, § 17 of the Constitution of the State of Texas, Vernon's Ann.St. and Article 1, § 19 thereof, and also in violation of the Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States.

We shall not set out appellants' petition, which is quite long. Suffice it to say that they alleged in substance that on February 20, 1956 they applied to the City of Houston for a building permit to construct on said premises a public garage at a cost of some $10,000. The building permit was denied. Appellants were advised by the Council through the City Secretary that it was denied because it appeared that said property would be needed for highway purposes. Appellants requested the City to purchase the property. They were informed that the City could do nothing about purchasing the property until litigation involving the legality of the so-called "wheel tax" had terminated favorably, when in all probability appellants would be contacted regarding the acquisition of the property.

Appellants also alleged that no money had been appropriated for the prospective highway or freeway linkage project in question, and that such project had not been approved by legal authority, nor had any steps been taken looking toward the condemnation of property that might be crossed or affected by said proposed freeway linkage, nor was there any certainty that the same would be constructed or the preliminary plans for the same would not be abandoned, nor had the City established any building lines defining the land that might be condemned, nor had any action been taken by the City or State sufficient to advise property owners at or near appellants' property as to what land would be affected, if any, in the event the proposed scheme or idea for a freeway linkage should become at some future time a reality.

Appellants further alleged that the denial of the building permit by the City amounted practically to a confiscation of their property and its beneficial use, and to an arbitrary, unjust, unreasonable and intentional limitation upon the use of their property, and a direct, actual and physical invasion or appropriation of their rights in said property with the intention of permanently depriving appellants of the use of same, and that the City's action manifested an intention to subject said property to a public use and amounted to "a taking."

Appellants then alleged alternatively a partial taking, damaging and destruction of their property and property rights in said lot and of the increments of the proceeds into which said property could be converted. They further alleged that the property had diminished in value and was not as valuable as it would be if it could be used as appellants intended to use it; that the City has prevented appellants from improving their property and maintaining it for its highest and best use as residential or commercial property; and that it has refused to permit the remodeling and modernization of said property under its general policy of refusing building permits so that the property would depreciate in value

and it would cost the City less if it decided later to take the property.

Appellee leveled eight special exceptions against appellants' pleading, alleging in essence that the granting or refusing of the building permit by appellee was within the police power of the City, and was a governmental function of the appellee within its police powers as a "home rule city," so that as a matter of law appellants could not recover damages for refusing their application for a building permit; that the refusal to issue the permit did not amount to "a taking," partial taking or direct invasion of appellants' property nor an actual appropriation thereof; and that as a matter of law appellants' allegations were insufficient and they were not entitled to recover any damages.

Appellants' 19 Points of Error are interrelated and will be considered together. Their contentions are substantially set out in the foregoing summary of the allegations contained in their petition. In addition, they assert that their property has been tied up for $3\frac{1}{2}$ years without the least semblance of legal authority; that no building lines for the highway have been established and may not be for years, and that the entire area including their property is frozen; that they have been and are denied the free use and enjoyment of their property, although required to pay taxes thereon; that the possession, use and enjoyment of their property has been abridged and destroyed by the exercise of the power of eminent domain under the guise of the police power to issue or refuse building permits; and that the freezing of their property is the first step toward the appropriation of the same for public use under the power of eminent domain.

Appellants assert that under Hammon v. Wichita County, Tex.Civ.App., 290 S.W. 2d 545, they are entitled to recover. In that case Wichita County obtained a temporary injunction against the appellant, enjoining him from drilling an oil well within a proposed right of way for an improved highway system. The County had not acquired the right of way either by purchase or condemnation proceedings, although it intended to do so at some future date. The Fort Worth Court of Appeals dissolved the injunction on the ground, among others, that the County had no right to destroy appellant's property prior to the lawful appropriation thereof by paying or securing the payment of compensation, and had no right to restrain appellant from making a lawful use of his property prior to a legal taking thereof by the County.

█ We are in accord with the holding in the Hammon case. It did not involve, as this case does, a claim for the recovery of damages or compensation. We think there is little question but that appellants in the present case under the facts alleged had, and still have, the right to compel the City and its officials, by mandamus or possibly a mandatory injunction, to issue to them a building permit. Upon the refusal of the City to issue such permit, appellants could proceed with the construction of their improvements without a permit and enjoin the City from interfering therewith, since the City by refusing such permit, is in effect illegally interfering with appellants' property rights and a lawful and legitimate use of their property prior to a legal taking thereof. City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599, error dism. Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387; City of Dallas v. Mitchell, Tex.Civ.App., 245 S.W. 944, error ref.

This Court is called upon to decide, however, whether appellants have the right under the facts of this case to sue for and recover damages or compensation against the City for allegedly taking or partially taking or damaging or destroying or interfering with the use of their property by refusing to issue to appellants a building permit.

We have not found or been cited to any Texas case directly in point. In Henle v.

City of Euclid, 97 Ohio App. 258, 125 N.E. 2d 355, relied on by appellants, the Court of Appeals of Ohio held in substance that the City does not have the right to "freeze" an owner's property or interfere with its beneficial use until it gets around to appropriating it for public purposes as a part of a freeway, nor is the owner compelled to stand by, paying taxes without benefit, until the development reaches a stage, if it ever does, where the property must be taken for freeway purposes. The Henle case was an action for a declaratory judgment, injunction and equitable relief and not for damages or compensation.

Appellants cite the case of State v. Hale, 136 Tex. 29, 146 S.W.2d 731. In that case the damage sued for and recovered was for permanent injury to the owner's land by reason of the obstruction of the natural flow of flood waters and the deposit of large amounts of sand and other substances on the owner's land growing out of the construction of a highway. There was a physical invasion and damage to Hale's land resulting from the construction of a public work and hence Hale was entitled to recover. The court held that the power of the State to take, damage or destroy private property for public use was subject to the right of the owner thereof to adequate compensation for such taking, damaging or destroying of the property, under Section 17 of Article I of the Constitution of Texas. The Hale case is distinguishable from the instant case. There had been no actual or partial taking of appellants' property, nor any physical invasion or appropriation thereof or physical damage thereto.

Appellants cite a number of cases holding in effect that ordinances are unconstitutional if they require set-backs of building lines without compensation or provide that those who construct buildings outside building lines do so at their own risk and are not entitled to compensation in the event of the later acquisition of such property by eminent domain. The facts in those cases are quite different from those in the present case in which no ordinance has been passed by appellee establishing building lines or set-backs or defining any area that will be condemned. Furthermore, in none of such cases was any effort made to recover damages against a municipality because of the enactment of an unconstitutional ordinance.

■ We agree with appellants that under our present Constitution adequate compensation is recoverable for damage to property, as well as for the taking thereof, and that the word "taking" includes any direct invasion of a property right. Ft. Worth Imp. Dist. No. 1 v. City of Ft. Worth, 1913, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994, 16 Tex.Jur., p. 436, Eminent Domain, § 151. Apparently the only purpose in distinguishing between a "taking" and "damage" is to determine whether prepayment of compensation is requisite and the rule of damages to be applied. 16 Tex.Jur., p. 433, § 149; G. C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467.

The Supreme Court of the United States, in the case of City of Chicago v. Taylor, 125 U.S. 161, 8 S.Ct. 820, 823, 31 L.Ed. 638, concurs in the following interpretation given the constitutional provision of the State of Illinois in an earlier case, such provision being similar to that of the Texas Constitution:

"The conclusion there reached was that, under this constitutional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and use of an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate, but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover."

We are in accord with such interpretation. In the present case, however, there

has been no construction of any improvement whatever, and nothing has been done upon the premises in question or near such premises of a public nature or use that can possibly damage appellants' property. The Supreme Court of Texas, in Texas Highway Department v. Weber, 147 Tex. 628, 219 S.W.2d 70, 72, stated: "The essential element that must exist in order for a taking of private property to be compensable is that the property must be taken for, or applied to, a public use."

It is clear that the instant case is distinguishable from those cases in which compensation has been recovered for consequential injury or damage to property resulting from the construction of a public road or drainage ditches, or from the flooding or washing away of lands as a result of the construction of a public work, or from fumes arising from a municipal sewage plant, or from the construction of a pipeline by the city, or from the changing of grades of streets, or from the closing of streets and destroying access to property, or from the construction and operation of drainage improvements. In this case there has been no construction of the freeway linkage, no lines or boundaries established, no ordinance passed, no money appropriated and no set-backs required. Indeed, nothing has been done of a physical or tangible nature to appellants' property or in connection with any other property in the area that could in any way interfere with appellants' use of their property in its present state.

█ The granting or refusing of a building permit is a governmental function. In vol. 9, McQuillin, Municipal Corporations, § 26.200, p. 479, it is stated:

"The requirement of building permits is pursuant to and in exercise of municipal police power. Also, the issuing of building permits is a governmental function for which a municipality cannot be held liable in damages."

In the same volume, § 26.98, p. 205, the author states:

"No cause of action for damages against a city or its officers can arise from the grant or denial of a license or permit or from any action or omission with respect thereto, since the issuance of a license or permit is a governmental function."

The Supreme Court of Texas, in City of San Antonio v. Pigeonhole Parking of Texas, Inc., Tex., 311 S.W.2d 218, held in effect that the issuance of a permit is within the police power of a city, and a governmental function.

In City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516, 519, our Supreme Court held: "A municipality is not liable for the negligence of a building inspector in the performance of his duties; because such duties are governmental functions." There are no allegations of negligence in the present case. We think that the intentional act of the council in refusing the permit is just as much the exercise of a governmental function as would be the negligence of a building inspector in the performance of his duties.

The Supreme Court of Texas, in Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396, 398, stated:

"The rule of immunity from liability of a city in exercising governmental functions extends to discretionary powers, and generally there is no liability for damages resulting either from the failure to exercise, or the manner of exercising or for errors of judgment in exercising such discretionary powers of a public nature embracing judicial or legislative functions. 43 C.J. 928, Sec. 1704."

█ True, the City may not, under the guise of the police power, take or damage property without payment of just compensation. Even though we assume that the City's refusal to grant the permit in ques-

tion, under the facts of the present case, is unreasonable and arbitrary and not a proper exercise of the police power, its refusal to grant the permit is, nevertheless, the exercise of a governmental function or power, which does not give rise to an action for damages.

Appellants insist, however, that the wrongful exercise of the police power in this case has resulted in the taking or damaging of their property, for which they should be permitted to recover adequate compensation. The answer to their contention is that the action of the City has not progressed to the point where there has been any taking or damaging of property within the purview of either the State or Federal constitutions, since up to this time the City has merely refused to grant a building permit. True, appellants desire to make improvements which, they say, will result in a greater and more lucrative use of their property in the future. If they are wrongfully kept from so doing, they may obtain relief by mandamus or mandatory injunction requiring the City to issue the requested permit, but they may not recover damages or compensation since there is no actual taking or even damage to their property as such.

In Lewis v. Texas Power & Light Co., Tex.Civ.App., 276 S.W.2d 950, 956, writ ref., n. r. e., the defendant had gone on land of plaintiff for the purpose of making a preliminary survey with a view to acquisition of eminent rights for construction of a transmission line. The Court of Civil Appeals held:

"We have already held that this suit is not a condemnation proceeding. We also hold that it is not a 'taking' of appellants' property as contemplated by Art. 1, § 17, of the Constitution of Texas, Vernon's Ann.St.

"We find no Texas case on the point, but it has been passed on in other jurisdictions. The cases are annotated in 29 A.L.R. 1409, from which we quote: 'An entry on private property for the sole purpose of making the necessary explorations for location is not taking it; the right remains in the owner as fully as before; no permanent injury can be sustained; nothing is taken from him; nothing is given to the company.'"

The preliminary explorations in the Lewis case did not constitute a taking or damage to the owner's property. In the instant case the denial of the building permit did not constitute a taking or damage to appellants' property although it was denied in the anticipation that at some uncertain future date steps might be taken under the right of eminent domain that would amount to a taking of their property or damage thereto.

■ Indeed, appellants pleaded that at the time of the City's denial of the permit no steps looking toward the condemnation of any property that might be crossed or affected by said proposed freeway linkage had been taken, and further that there exists no ordinance or law prohibiting or interfering with appellants' right to the construction of proper buildings or improvements such as contemplated by them. The denial of the permit did not change that situation. We think the Council has arbitrarily and unreasonably denied the permit. We are of the opinion, however, that the City is not liable in damages on account of the Council's wrongful action since the denial of the permit was in the exercise of a governmental function and further because such denial in itself has not resulted in any taking or damage to appellants' property. They were still free to make the desired improvements without a permit under the facts pleaded or to force the issuance of such permit. Instead of doing so, they waited for some time and then chose the wrong remedy.

We have concluded that appellants, as a matter of law, have failed to plead a good cause of action, and that the Trial

Court did not err in sustaining appellee's exceptions. Appellants' Points of Error are overruled.

The judgment of the Trial Court is affirmed.