**Donald R. THUROW et al., Appellants,**

v.

**CITY OF DALLAS, Appellee.**

**No. 18125.**

Court of Civil Appeals of Texas, Dallas.

July 19, 1973.

Rehearing Denied Sept. 24, 1973.

————◆————

Wm. Andress, Jr., Andress, Woodgate & Lodewick, Dallas, for appellants.

Alex Bickley, City Atty., Leigh Bartlett, Asst. City Atty., Dallas, for appellee.

GUITTARD, Justice.

■ In this condemnation suit the landowners complain that the trial court erred in submitting to the jury the issue of value of the property on August 12, 1971, when the city deposited in court the amount awarded by the special commissioners, rather than in 1964, when the "Crosstown" street-widening project was announced, and in excluding evidence bearing on its value at the earlier time. We hold that the date of deposit was the correct time of valuation because there is no evidence that any earlier action by the city amounted to a taking or compensable damaging of the property. We also find no error in the court's admission of certain testimony of the city's appraiser, now complained of as hearsay.

■ The general rule is that announcement of a projected public improvement, together with preparation of plans and maps showing the property in question as within the limits of the project, without any actual interference with the owner's use, does not constitute a taking or compensable damaging, even though it may reduce marketability as a practical matter. City of Houston v. Biggers, 380 S.W.2d 700 (Tex.Civ.App.—Houston, 1964, writ ref'd n. r. e.), cert. denied 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965). This rule is recognized in cases cited by the landowners, which hold that in extraordinary circumstances an unequivocal manifestation of intention to take the property, followed by work on the project or other action which actually interferes with the owner's use and enjoyment, may establish a taking or damaging requiring determination of the value at an earlier date. See Becos v. Masheter, 15 Ohio St.2d 15, 238 N.E.2d 548 (1968); In re Appropriation for Highway Purposes of Lands of Goldflies Storage & Moving Co., 18 Ohio App. 2d 116, 247 N.E.2d 315 (1969); Cleveland v. Hurwitz, 19 Ohio Misc. 184, 249 N.E.2d 562 (P.Ct.1969); Cf. Urban Renewal & Community Development Agency v. Monsky, 436 S.W.2d 77 (Ky.1969).

■ We need not determine whether those authorities would be followed in Texas,[1] since we find no evidence here of extraordinary circumstances which would justify an earlier valuation. There is evidence that the proposed "Crosstown" project became known in the early 1960's, but

---

1. The difference between a de facto taking, involving actual interference with use of property, and "condemnation blight," which merely gives the landowner the right to have his property valued as it would have been at the time of the de jure taking but for the debilitating threat of condemnation, is explained by the New York Court of Appeals in City of Buffalo v. J. W. Clement Co., 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971). See also 4 Nichols' Law of Eminent Domain § 12.3151 [5] at 12–336 (Rev.3d ed. Supp. 1973 at 39).

none as to when the city council officially adopted a plan including the Thurow property involved in this suit. Donald Thurow testified that he first heard about the project late in 1963, and that when he attempted to check it out at the city hall several months later, he was shown drawings which included his property in the project. He said he made inquiries of the city from time to time as to when they were actually going to take his property, and was repeatedly advised that it would be in approximately six months, but actually it was seven years. The extraordinary circumstance on which the Thurows rely to establish the earlier date of valuation is the city's refusal to grant them a building permit to complete their projected improvements on the property, which was an old residence converted into six apartments. However, this refusal was not established by proof. Thurow testified that he was advised concerning the status of building permits on the property when he was shown the city's plans, but an objection was sustained to a question concerning notations on the plans regarding building permits, and the record contains no evidence of the city's policy in this respect, or that the Thurows ever applied for a permit. Neither is there any showing of a valid ground on which a permit could have been denied. Wrongful denial of a building permit does not in itself constitute a taking or form the basis for an action for damages, since in such a situation the owner has a remedy by mandamus or injunction against the city officials. Kirschke v. City of Houston, 330 S.W.2d 629 (Tex.Civ.App.—Houston, 1960, writ ref'd n. r. e.), appeal dism'd 364 U.S. 474, 81 S.Ct. 242, 5 L.Ed.2d 221 (1961).

█ There is evidence that the character of the neighborhood deteriorated as a result of announcement of the project, and the city's appraiser admitted that property directly in path of such a project can only be sold to speculators who hope to get a better deal from the city. We hold that depression in market value resulting from the project does not require valuation at a date earlier than the actual taking. The value to be found by the jury is the hypothetical price which the property would bring in a voluntary sale on the date of taking, unaffected by the project. Thus the property must be valued without including any enhancement resulting from the project. Fuller v. State, 461 S.W.2d 595 (Tex.1970). The same reasoning applies in favor of the landowner to require valuation without any depression resulting from the project. State Road Dep't v. Chicone, 158 So.2d 753 (Fla.1963); Congressional School of Aeronautics v. State Roads Comm'n, 218 Md. 236, 146 A.2d 558 (1958); City of Buffalo v. J. W. Clement Co., 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971); 4 Nichols' Law of Eminent Domain § 12.3151 [5] (Rev.3d ed. Sackman 1971, and Supp.1973).

We have before us no objection that the city's appraiser was permitted to testify to a valuation depressed by the threat of condemnation,[2] and neither do we have any complaint that the court failed to instruct the jury in the charge not to make such a depressed valuation.[3] We hold only that no reversible error is shown by the Thurows' points complaining that the court excluded evidence concerning valuation of the property in 1964 and failed to submit to the jury the issue of value at that time.

In their last point the Thurows complain that the city's appraiser Galloway was permitted to give an opinion on the value of the property according to a formula based on hearsay testimony concerning what owners of two other apartment houses would have received in rents if their apartments had been fully occupied. This point also is overruled. The record shows that Galloway did not base his opinion of the value of the Thurow property on potential gross rents of other properties. After ex-

2. See Congressional School of Aeronautics v. State Roads Comm'n, supra.

3. See Murray v. United States, 76 U.S.App. D.C. 179, 130 F.2d 442 (1942).

plaining the market, income and cost approaches to value, he testified that he used the market approach, and stated that in arriving at his opinion of $18,500, he considered the sales of the Cavillo and Massey properties, which he considered comparable. No objection was made to this testimony. Counsel did raise the hearsay objection when Galloway began to testify concerning rents received from the Cavillo property, and when this objection was overruled, counsel stated that he objected "to the entire line of questioning." Without further objection, Galloway gave the amount of the rents and the consideration for the sale to Cavillo. Similar testimony was given concerning the Massey property, and the hearsay objection was again made and overruled. Counsel inquired whether the objection might "continue," and the court agreed.

These proceedings occurred before admission of the testimony now complained of, which was offered by the city apparently in rebuttal of the testimony of the Thurows' appraiser, who had adopted the income approach and had stated his opinion of the value of the Thurow property based on six to seven times the gross rents. Galloway was asked to determine the "gross rent multiple" on the Cavillo and Massey sales and he replied that he had calculated the Cavillo sale at 3.34 times the gross rents and the Massey sale at 3.2 times the gross rents. When asked to apply the 3.34 multiple to the Thurow gross rent of $4,076, he made a calculation resulting in a figure of $13,446. Galloway did not testify that this figure represented the value of the Thurow property or that he had considered it in his own appraisal.

■■ Galloway's testimony concerning the "gross rent multiple" was given without any objection other than the hearsay objection, which, though continuing, was not sufficiently specific to raise the complaint now presented, that testimony of value could not be given according to a formula based on hearsay testimony of rentals from other properties. The Thu-

rows' third point does not appear to be directed toward the trial court's ruling on the original hearsay objection, but, if we should construe it as complaining of that ruling, it is not well taken because Galloway's testimony concerning rents and sale prices of the other properties was admissible to show the information he considered in arriving at his opinion. State v. Baker Bros. Nursery, 366 S.W.2d 212 (Tex. 1963); State v. Oakley, 163 Tex. 463, 356 S.W.2d 909 (1962). If the Thurows desired an instruction limiting the testimony to that purpose, they had the burden to request such an instruction in order to preserve their right to complain on appeal, but they made no such request. Texas Power & Light Co. v. Adams, 404 S.W.2d 930 (Tex.Civ.App.—Tyler, 1966, no writ); Dyer v. State, 388 S.W.2d 226 (Tex.Civ. App.—El Paso, 1965, no writ).

Affirmed.