**CITY OF AUSTIN, Appellant,**

v.

**Joe M. TEAGUE et al., Appellees.**

**No. 5762.**

Court of Civil Appeals of Texas, Waco.

Sept. 22, 1977.

Opinion after Filing of Remittitur Sept. 28, 1977.

Rehearing Denied Oct. 20, 1977.

Jerry L. Harris, City Atty., Roy Rutland, III, Asst. City Atty., Austin, for appellant.

Douglass D. Hearne and William M. Knolle, Stayton, Maloney, Hearne & Babb, Austin, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant City from $109,939. judgment in favor of plaintiffs Teague, et al.

Plaintiffs sued defendant seeking mandamus requiring defendant to issue plaintiffs a waterway development permit to reroute two small streams over an 8½ acre tract owned by plaintiffs, and for damages resulting from denial of such permit by the Austin City Council.

Trial was to a jury which found:

Issue 1. Defendant thru its course of conduct between January 1973 and June 26, 1975, refused to allow plaintiffs to alter the portions of Harpers Branch and the Ramble which cross plaintiffs' tract of 8.51 acres with the intention to prevent all development of that tract and preserve it as a scenic easement for the benefit of the public.

Issue 2. The reasonable market value of plaintiffs' 8.51 acres on June 26, 1975 with approval of the waterway development was $741,202.

Issue 3. The reasonable market value of plaintiffs' 8.51 acres on June 26 without approval of the waterway development permit was "none".

Issue 4. The cash value of the loss of use of plaintiffs' property as result of defendant's denial of the waterway development permit on June 26, 1975 was $223. per day.

The trial court rendered judgment mandamusing the City to issue the permit which had been denied, and further decreed defendant pay plaintiffs $223. for each day from date of denial of the permit to date of its issuance (totalling $109,939.). The City pursuant to the mandamus issued plaintiffs the permit, but prosecuted limited appeal from the $109,939. decree as damages for the time the permit was denied.

Defendant asserts 5 points contending:

1) The trial court erred in rendering judgment based on the jury's answer to Issue 4, because the granting or denial of a waterway development permit is a government function of the city within its police power, the exercise of which does not give rise to any claim for money damages.

2) The trial court erred in rendering judgment based on the jury's answer to Issue 4, because as a matter of law, the denial of a waterway development permit did not amount to a taking or damaging for public use under either the Texas or United States Constitutions.

3) The jury's answer to Issue 4 is not supported by sufficient evidence, and is so against the great weight and preponderance of the evidence as to be manifestly unjust. Further, both the answer and judgment are based on the erroneous assumption improvements to plaintiffs' property could have been completed and the property leased the day the permit was denied, contrary to the uncontradicted evidence.

Plaintiffs acquired the land in December 1972. It is adjacent to I-35, is rough and uneven, and two wet-weather creeks known as Harpers Branch and the Ramble run thru the property. The consulting engineer hired by plaintiffs to plan development of the property advised it was necessary to enclose or reroute the two creeks to make a site upon which a structure could be built. The property was zoned top-permit retail businesses, motor hotels or office buildings up to 65 feet in height. Plaintiffs began dozing the brush and vegetation. No city ordinance prevented this, but there was an ordinance requiring a permit if the creeks were to be altered. Plaintiffs' dozing of the site provoked opposition from nearby residents who wanted plaintiffs' land left in an undeveloped state. At the next City Council meeting, January 11, 1973 area residents urged the Council to take steps to prevent further development of plaintiffs' land. On January 26, 1973 the Council adopted a resolution requesting the State Highway Department to acquire plaintiffs' land for a "scenic easement." Shortly thereafter plaintiffs applied for a permit to enclose portions of the two creeks in culverts. The City's Director of Public Works granted the permit, which action was appealed by the citizen group to the City Planning Commission. All evidence was that the proposed alterations would provide hydraulically and structurally sound drainageway adequate to handle anticipated waterflows. This was all that was required to be entitled to the permit. The Planning Commission denied the permit. Plaintiffs then offered to sell the land to the Highway Department and gave it a 90-day option to purchase. The Highway Department did not purchase because the State had no funds to purchase property for scenic easement purposes. In late 1973 plaintiffs reapplied for a water permit, which was this time approved by the City Engineering Department and the City Planning Commission. An area citizen, Ms. Buxkemper, ap-

pealed to the City Council which denied the permit on February 14, 1974 despite overwhelming evidence that plaintiffs had satisfied every conceivable requirement. The City Council at the February 14, 1974 meeting set public hearing on a New Creek Ordinance, which was passed on March 7, 1974. The new ordinance in addition to the existing engineering criteria dealing with hydraulics, drainage and structural soundness, required any plan to box or reroute a creek must also: "F. Preserve the natural and traditional character of the land and waterway to the greatest extent feasible"; and further provided "decision to grant or deny a permit shall be accompanied by a detailed statement of the reasons for such action".

Plaintiffs applied again for a water development permit under the new ordinance. The Engineering Department approved the application. Ms. Buxkemper appealed to the Planning Commission which appeal failed. She then appealed to the City Council, limiting her appeal to Subsection F. "That the proposed development did not preserve the natural and traditional character of the land and waterway to the greatest extent feasible." The City Council on June 26, 1975 denied plaintiffs' application for permit, but never gave "a detailed statement for the reasons" as required by the ordinance.

As noted, the jury found defendant refused plaintiffs' application for the water permit, "with the intention to prevent all development of the tract and preserve it as a scenic easement for the benefit of the public".

Plaintiffs by reply points assert the trial court's judgment correct because the City Council's action in denying the permit with the intention to prevent all development and preserve the land as a scenic easement for the public, was arbitrary, unreasonable and an invalid exercise of the police power; and further constituted a damaging of plaintiffs' property rights for public use for which plaintiffs are entitled to be compensated.

■ The trial court as a part of its final judgment issued mandamus to compel the City to issue the permit, which the City complied with, and does not appeal from. Thus, the trial court found the City's action was unauthorized, unreasonable, arbitrary and an invalid exercise of the police power, and the City is bound by such implied findings. *Texas Van Lines, Inc. v. Godfrey,* Tex.Civ.App. (Dallas) NRE, 313 S.W.2d 922; *Badeaux v. Cohen,* Tex.Civ.App. (Houston 14) NWH, 437 S.W.2d 310; *Graham v. Turner,* Tex.Civ.App. (Waco) NWH, 472 S.W.2d 831.

Moreover, the City has not challenged the findings of the jury that the City's refusal to grant the permit totally destroyed the value of the land.

The City asserts if the denial of the permit is unauthorized, unreasonable or arbitrary, the affected party can secure his rights by mandamus, and has no cause of action for money damages because the municipal action involved is still governmental in nature; citing *Kirschke v. City of Houston,* Tex.Civ.App. (Houston) NRE, 330 S.W.2d 629; *City of Houston v. Biggers,* Tex.Civ.App. (Houston) 380 S.W.2d 700; *Thurow v. City of Dallas,* Tex.Civ.App. (Dallas) NRE, 499 S.W.2d 347; *Ellis v. City of West University Place,* 141 Tex. 608, 175 S.W.2d 396; *Lombardo v. City of Dallas,* 124 Tex. 1, 73 S.W.2d 475; *City of San Antonio v. Pigeonhole Parking of Texas,* 158 Tex. 318, 311 S.W.2d 218.

■ We think the foregoing not determinative of this case. The constitutional provisions that no person's property shall be taken, damaged, or applied to public use without adequate compensation being made applies to the state and its agencies. And there is really no distinction between the powers of eminent domain and an exercising of the police power, when a person's property is taken or the use of same damaged by the state (or city). A person's property may not be taken or damaged as an incident to the exercise of the police power without the payment of compensation. *San Antonio River Authority v. Lew-*

*is,* Tex., 363 S.W.3d 444, 450; *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 105.

■ And a direct physical invasion of property is not required under the eminent domain section of our constitution for a property owner to be entitled to compensation for the damaging of his property for a public use. *DuPuy v. City of Waco,* Tex., 396 S.W.2d 103; *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513.

In *San Antonio River Authority v. Garrett Brothers,* Tex.Civ.App. (San Antonio) NRE, 528 S.W.2d 266, 272, the City of San Antonio refused to issue the Garretts permits to install utilities in a tract they were subdividing into residential and commercial lots. The City refused the permits because the City proposed to acquire the land at some future date and felt development of the land would increase the cost of acquisition. It was some 7 months before the permits were granted and the Garretts allowed to resume development. The Garretts sued for their damages. The City citing *Kirschke,* supra and 37 A.L.R.2d 694, contended that in regulating the development of land in general and particularly in refusing to issue permits, it is exercising a governmental function and is therefore immune from liability. The court rejected this contention and said:

"In order to dispose of this point we must consider the nature of plaintiffs' complaint. Plaintiff alleged that the actions of City deprived it of the use and enjoyment of its property, albeit for a temporary period, and constituted a 'taking' or 'damaging' of its property for which, under the provisions of Article I, Sec. 17 of the Texas Constitution, it was entitled to compensation. It is settled that the defense of governmental function is not available where the conduct of the municipality amounted to a taking or damaging within the Constitutional prohibition. Article I, Sec. 17, of the state constitution does not limit the requirement of payment of compensation to cases where the taking or damaging results from the exercise of 'proprietary'

functions. Every power of government is subordinate to the requirement that compensation be paid. *Stockwell v. State,* 110 Tex. 550, 221 S.W. 932 (1920); 18 McQuillin, op.cit. Sec. 53.24b, p. 182.

"* * * it is now universally recognized that acts short of actual physical invasion, appropriation or occupation can amount to a compensable taking, and that governmental restrictions on the use of property can be so burdensome as to constitute a compensable taking. * *.

"No valid reason exists for holding that unreasonable interference with the right to use property should not be regarded as a compensable taking.

"* * * The empty formalism of 'police power' cannot be made the basis for denying compensation, and the Texas Supreme Court has expressly refused to 'compartmentalize an exercise of sovereignty as either police power or eminent domain for the resolution of problems arising under Article I, Sec. 17, of the Constitution . . .' *DuPuy v. City of Waco,* 396 S.W.2d at 107."

■ We hold that the defense of governmental function is not available to the City of Austin to preclude imposition of liability for the acts of its City Council in interrupting plaintiffs' development of his land by arbitrarily refusing the water development permit, and that such conduct of the City amounted to a taking or damaging within constitutional prohibition.

Contentions 1 and 2 are overruled.

■ The judgment awarded plaintiffs $223. per day damages from June 26, 1975 to date of judgment (totalling $109,939.). There is evidence the property had a fair market value of $641,000. to $832,000., and the jury found the property with approval of the water permit to be worth $741,292. There is evidence that an owner should expect a yield of 9% or 10% of its fair market value for the use of his property. Thus there is evidence plaintiffs suffered damages of $175.62 to $228. per day.

We overrule contention 3.

However, from the record we are of the opinion the verdict and judgment of the trial court is excessive in the sum of $30,000. and that this cause should be reversed for that reason only. Plaintiff is given 10 days from this date to file a remittitur of $30,000. Rule 440 TRCP. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835; *World Oil Co. v. Hicks,* 129 Tex. 297, 103 S.W.2d 962; *Caswell v. Satterwhite,* Tex. Civ.App. (Waco), NRE, 277 S.W.2d 237; *Big Town Nursing Home v. Newman,* Tex.Civ. App. (Waco) NWH, 461 S.W.2d 195. If such remittitur is filed within 10 days, the judgment of the trial court will be reformed and affirmed.

REVERSED AND REMANDED.

### OPINION AFTER FILING OF REMITTITUR

Appellee having filed remittitur of $30,000, as suggested by this court, the judgment of the trial court is reformed in conformity with such remittitur, and as reformed is affirmed in the amount of $79,939. All costs of appeal are taxed against appellant City.