Appellee= Motion for Rehearing is Overruled; Opinion of July 24, 2007 is
withdrawn; Reversed and Remanded and Substitute Opinion on Rehearing issued
October 11, 2007








 

Appellee= Motion for Rehearing is Overruled; Opinion of July 24, 2007 is withdrawn; Reversed
and Remanded and Substitute Opinion on Rehearing issued October 11, 2007.                                                                                        

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01272-CV

____________

 

MAGUIRE OIL COMPANY, MAGUIRE ENERGY
COMPANY, CARY M. MAGUIRE, CARY M. MAGUIRE AS MANAGER FOR THE OIL FUND U/I/D
9/1/76, CARY M. MAGUIRE AS TRUSTEE FOR UTD 1/1/83 FBO CARY M. MAGUIRE, JR.,
CARY M. MAGUIRE AS TRUSTEE UTD 1/1/83 FBO MELINDA AMBLER MAGUIRE, CARY M.
MAGUIRE AS TRUSTEE UTD 5/1/84 FBO ANN BLAINE MAGUIRE, DON R. HOLLOWAY AS
CUSTODIAN OF THE MATTHEW HOLLOWAY TUGTMA, DON R. HOLLOWAY AS CUSTODIAN OF THE
SARAH L. HOLLOWAY TUGTMA, DON R. HOLLOWAY AS CUSTODIAN OF THE BARBARA ANN
HOLLOWAY TUGTMA, DON R. HOLLOWAY AS CUSTODIAN OF THE TILLMAN R. HOLLOWAY
TUGTMA, WILLIAM N. COLLINS, JR. AS CUSTODIAN OF THE L. PAIGE COLLINS TUGTMA,
WILLIAM N. COLLINS, JR. AS CUSTODIAN OF THE HATTIE S. COLLINS TUGTMA, WILLIAM
N. COLLINS AS CUSTODIAN OF THE CHANDLER COLLINS TUGTMA, Appellants

 

V.

 

THE CITY OF HOUSTON, Appellee

 



 

On Appeal from the County
Civil Court at Law No. Four

Harris County, Texas

Trial Court Cause No. 817,512

 



 








S U B S T I T U T E  O P I N I O N  O N   R E H E A R I N G

We withdraw our opinion issued on July 27, 2006.  The City=s Motion for
Rehearing is overruled and we issue this Substitute Opinion.

In this appeal from the grant of a plea to the
jurisdiction, Maguire Oil Company, et al (AMaguire@) seeks reversal
of a judgment in favor of The City of Houston (Athe City@) on the following
grounds: (1) the trial court erred in determining the case was not ripe for
adjudication; alternatively (2) the trial court erred by dismissing Maguire=s claims because the
City=s jurisdictional
plea did not implicate Maguire=s two alternate theories of recoveryCinverse
condemnation and physical taking. Because the trial court erred by granting the
City=s plea to the
jurisdiction, we reverse and remand.

I. Factual and Procedural Background

We outline the facts in the light most favorable to
Maguire, as the non-movant below.  Maguire owns substantial mineral interests
around and underneath Lake Houston.  In the 1940=s, the City
acquired surface rights to the land which eventually was inundated with water
to form Lake Houston. During 1965, the City adopted an ordinance that generally
proscribed pollution. During 1967, the City amended the ordinance to eliminate
drilling in or around Lake Houston.  In 1977, the City Council amended the
definition of Acontrol area@ to cover land in
its extraterritorial jurisdiction.  The ordinance and accompanying definitions
that were effective during 1977 are at issue in this case even though the City
redefined Acontrol area@ in 1997.








In the late 1980=s, Maguire began
to investigate prospects for a gas well in an area near Houston known as the AScanlan Deep
Prospect,@ a substantial portion of which lies beneath Lake
Houston.  Initially, Maguire began to drill outside the city limits.  After a
vertical well failed, Maguire attempted to drill directionally.  This effort
also failed.  After spending more than three million dollars, Maguire
determined that the only feasible location to drill for natural gas in the
Scanlan Deep Prospect would be within 1000 feet from Lake Houston.  During
1991, Maguire decided to drill a vertical well inside the city limits,
approximately 300 feet west of Lake Houston.  Accordingly, Maguire filed
appropriate documents and requested that the City issue a drilling permit.  On
May 7, 1991, the City approved a permit to drill at the chosen location. Later,
the City ratified and extended that permit.  Maguire spent approximately
$200,000 building roads, clearing the location, and moving in the rig and
equipment.  On October 31, 1991, the City issued a stop work order, and revoked
the permit pursuant to Houston Code of Ordinances Chapter 23, Article IV
section 23-102.  As it existed in 1991, Section 23-102 provided:

No well shall be drilled within the
control area of Lake Houston which is nearer than 1,000 feet from the normal
water=s edge of Lake
Houston or any of its drains, streams or tributaries.  In addition, no well
shall be drilled within such control area at an elevation of less than 48 feet
above sea level.

Maguire=s multiple proposals to the City=s legal, health,
planning and development departments, as well as the water-quality director
were rejected.  The City=s water-quality director steadfastly
maintained the position that the a drilling permit would not be issued. All of
the City representatives maintained the position that the ordinance provided
blanket prohibition drilling in the Acontrol area.@ All City
personnel responsible for enforcement of the ordinance rejected Maguire=s attempts to
proceed with drilling the previously permitted well.  Maguire attempted to
communicate with the Mayor, but these efforts were to no avail.  Subsequently,
Maguire filed suit for inverse condemnation, negligent misrepresentation, and
promissory estoppel in the 55th District Court of Harris County.








This civil action has been on a fourteen-year journey
bouncing between federal and state courts only to remain unresolved.  The City
removed the case to the United States District Court for the Southern District
of Texas.  Subsequently, the federal district court determined it did not have
subject matter jurisdiction and it was remanded.  Following remand to the 55th
District Court of Harris County, the court granted the City=s motion for summary
judgment. Maguire appealed to the Houston courts of appeals.  Pursuant to a
docket-equalization order, appellate review was assigned to the Texarkana Court
of Appeals.  That court upheld the trial court=s summary judgment
in favor of the City relative to Maguire=s negligent
misrepresentation claim, but reversed and remanded the remaining claims for
further proceedings in the 55th District Court.  Maguire Oil Co. v. City of
Houston, 69 S.W.3d 350, 372 (Tex. App.CTexarkana 2002,
pet. denied).  Notably, the Texarkana Court of Appeals concluded that section
23-102 did not apply to Maguire=s drill site.[1]


In the interim, this court issued Taub v. Aquila
Southwest Pipeline Corp., wherein we held that the county civil courts at
law have exclusive jurisdiction over condemnation and eminent domain cases.  93
S.W.3d 451, 456 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
Following Taub, Maguire=s inverse condemnation claim was dismissed
from district court and re-filed in County Civil Court at Law Number Four (Atrial court@).  Both parties
filed motions for summary judgment. Among its grounds for summary judgment, the
City urged that Maguire=s takings claim was not ripe.  The trial
court requested that the City  restyle its ripeness challenge as a plea to the
jurisdiction, and requested briefs.  On November 29, 2005, the trial court
granted the City=s plea to the jurisdiction and dismissed
Maguire=s entire case.  On
appeal, this court will answer the limited question whether Maguire=s claims are ripe
for adjudication. 

II. Ripeness








In its first issue, Maguire contends the trial court erred
by determining its suit was not ripe for adjudication.  It is well settled that
a dispute must be ripe for adjudication before a court may exercise subject
matter jurisdiction.  See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922,
928 (Tex. 1998).  We review a ripeness determination de novo.  Id.  In
context of an inverse condemnation case, the matter is not ripe unless the
governmental entity charged with implementing the regulation that allegedly
caused the taking has reached a final decision.  See Williamson County Reg=l Planning Comm=n v. Hamilton
Bank of Johnson City, 473 U.S. 172, 186 (1985); see also Mayhew,
964 S.W.2d at 928B29 (stating that we look to federal
jurisprudence to guide our review of these disputes).  

A final decision is prerequisite to ripeness in the context
of regulatory takings and related constitutional claims.  Mayhew, 964
S.W.2d at 929.  That final and authoritative decision must be Aof the type and
intensity of development legally permitted on the subject property [because a]
court cannot determine whether a regulation has gone >too far= unless it knows
how far the regulation goes.@  Id. (citation and quotation
omitted).  Stated differently, we must have sufficient evidence in the record
to compare prohibited uses with any permissible uses that may be made with the
affected property.  Id.  The final decision requirement ordinarily
includes both a rejected proposed use and denial of a variance from controlling
regulations.  See id.  However, futile variance requests or
re-applications are not necessary.  Id.

It is also important to note the difference between the Afinal decision@ requirement and
exhaustion of administrative remedies.  The finality requirement concerns
whether the initial decision maker has arrived at a definitive position on the
issue that inflicts an actual, concrete injury whereas the exhaustion
requirement generally refers to administrative procedures available for review
of an adverse decision.  Hamilton Bank, 473 U.S. at 193. Thus, it is
important not to confuse availability of administrative remedies with the
necessity of a final decision.  Further, as the Hamilton Bank opinion
highlights, our focus for purposes of determining whether the governmental
entity has reached a final decision is on the procedure and regulations
implemented by the entity .  See id. at 186.  








The City contends Maguire did not receive a final decision
because it did not pursue an appeal to the City Council.  Maguire counters that
it received a final decision, and if further administrative appeals were
possible, they would have been futile.

A.      Section
23-102

We first address section 23-102 and whether Maguire
received a final decision from the proper governmental entity prior to
initiating suit. 

1.  The City Council is not the Relevant Decision Maker

It is undisputed that the City contended in all other
forums, and contends on appeal, that Chapter 23, Article IV, section 23-102 of
the Code of Ordinances prohibits Maguire from drilling its well.  Although the
City contends Maguire should have proceeded with an appeal to City Council, its
argument is unavailing for three reasons: (1) the regulations governing Lake
Houston denominate the Director of Public Works and Engineering as the relevant
administrative decision maker; (2) the relevant regulations do not contemplate
an appeal from permit denial; and (3) even if an appeal were available, not
proceeding with any appeal would merely provide the City with an exhaustion of
administrative remedies defense. The articles of the Code of Ordinances under
Chapter 23 prescribe rules and procedures for appeal that vary from other
articles under that chapter.  For example, in Article IV, under definitions,
the  Adirector@ means the
director of public works and engineering and his designees.  Any person seeking
to perform a permitable action under Article IV must obtain a permit from the
director.  In contrast, Article V, Division 2, section 23-146 expresses that
for purposes of Article V, the building official must authorize any permit. 
Section 23-150 further explains that, under Article V, a permit will issue only
after the building official and utility official have given their approval.  The
differences in procedures for exhausting administrative remedies are even more
pronounced between the respective Chapters.  








We turn now to the applicable ordinances to identify the
relevant decision maker when a party seeks a drilling permit for a site near
Lake Houston.  Under Section 23-100(2) of Article IV entitled AWater Supply
Protection,@ a Adirector@ is defined as A[t]he director of
public works and engineering and his designees.@  Section 23-104
is the only portion of Article IV that pertains to issuance of a permit.  Under
that section, the director is the only person with authority to grant a
drilling permit.  Therefore, the director of public works and engineering is
the relevant decision maker.

The record clearly shows that the director rendered a final
decision concerning the application of section 23-102.  The original permit was
revoked and a stop work order was issued.  It is further clear that the
director was adamantly opposed to issuing any variance or concession that would
permit drilling at the proposed site.  Consequently, Maguire received a final
decision from the relevant decision maker.  However, the City argues that an
appeal to the City Council is prerequisite to a final decision.  Although this
argument confuses exhaustion of administrative remedies with obtaining a final
administrative decision, we will nevertheless address the City=s concerns.

 2.  No Appeal Possible to the City Council 

The City argues that Maguire should have appealed under
Chapter 31 of the Code of Ordinances.  We disagree. Chapter 31-30 contemplates
issuance of permits for drilling and operation of a well Anot prohibited by
the terms of this chapter.@ Maguire=s drilling permit
was revoked pursuant to Chapter 23.   Therefore, we must refer to that portion
of the Code of Ordinances for guidance regarding appeal procedures.  Chapter
23, Article IV, section 23-106, provides as follows: 

Permits issued under any provision
of this article shall not be transferable.  Any refusal by the director to
grant any consent or permit provided for in this article may be appealed
to the city council.








(Emphasis
added).  That section clearly provides for appeals only if a permit is provided
for in Article IV.  Pursuant to section 23-102, ANo well shall be
drilled within the control area of Lake Houston . . . . In addition, no well
shall be drilled within such control area . . . .@  Roger Hulbert,
the City=s representative,
testified that this provision had consistently been enforced, and there is no
procedure for a variance.  Therefore, under the City Code, no discretion could
be exercised.  See Palazzolo v. Rhode Island, 533 U.S. 606, 620 (2001)
(stating that once it is clear the relevant authority lacks discretion to
permit any development, a takings claim is likely to have ripened).

 3.  Maguire not Required to Exhaust Administrative
Remedies

Even if an appeal were possible, the City=s defense would be
predicated on exhaustion of administrative remedies.  As we have explained
already, resolution of this issue is not based on failure to exhaust
administrative remedies.  See Hamilton Bank, 473 U.S. at 193 (explaining
the difference between a final administrative decision and the exhaustion of
administrative remedies).  Consequently, an appeal under the provisions of
Chapter 31 would not be determinative of ripeness.  Interestingly, the City
seems to suggest that Maguire should lobby for a new ordinance.  Certainly, a
lobbying effort was not required to render this dispute ripe for adjudication
in our courts.

Nonetheless, Maguire requested and participated in meetings
with city administrators.  Maguire then unsuccessfully sought meetings with the
Mayor, who is a member of City Council. The City promulgated and enforced
regulations that foreclosed Maguire from pursuit of any additional
administrative remedies. Accordingly, Maguire received a final administrative
decision

B. Chapter 31
and Futile Action








The City contends the appeal provisions in Chapter 31are
applicable to the proposed drill site.  Thus, the City argues Maguire has not
received a final administrative decision.  However, during all times material
to this appeal, the drilling site contemplated by Maguire was expressly
prohibited under Chapter 23, Article IV section 23B102.  Accordingly,
we have concluded that any further efforts to obtain a permit to drill at the
proposed site would be futile.  Moreover, relevant to the City=s intent prior to
the date suit was filed, we note that the City has expanded the scope of
Article IV and there is still no provision for a permit under section 23-102.[2]


 According to the City, before a court may determine
whether further action is futile, the party seeking a permit must seek
variances, submit multiple applications, and pursue numerous attempts to
receive a permit.  Additionally, the City argues Maguire could identify a
different drill site.  While those arguments might be valid in other cases, they
are not valid in this case.

First, issuance of a permit is proscribed by the City;
therefore, seeking a variance would be superfluous.  See Palazzola, 533
U.S. at 621 (noting that an agency=s interpretation
of regulations to bar a landowner from ever engaging in the proposed activity
satisfies the final decision requirement).  Second, the law does not require
citizens to continuously pursue a permit simply for the exercise.  Id.
at 622.  Finally, Maguire contends there are no other feasible locations for
drilling.  We must assume Maguire=s contention is
valid given the procedural posture of this case.  See Tex. Dep=t of Parks and
Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (explaining that in an
appeal from a plea to the jurisdiction, we apply a standard similar to Texas
Rule of Civil Procedure 166a(c) and therefore take as true all evidence
favorable to the non-movant, here, Maguire).  Any further action by Maguire
would have been futile and not required under the ripeness doctrine. 

C.  Whether Maguire
Sought the Proper Remedy 








We also
reject the City=s contention that Maguire should have sought a writ of
mandamus or injunction to force the City to issue the permit in light of
Maguire=s contention that section 23-102 did
not apply to the proposed drill site.  The City cites two cases for this
proposition: City of Austin v. Teague, 570 S.W.2d 389 (Tex. 1978) and
Kirschke v. City of Houston, 330 S.W.2d 629 (Tex. Civ. App.CHouston 1959, writ
ref=d. n.r.e.) disapproved
by City of Austin, 570 S.W.2d at 394.  We agree with the City that Kirschke
seems to require pursuit of a writ of either mandamus or an injunction. 
However, we do not agree that Kirschke is controlling authority. 
Moreover, we disagree with the City=s contention that City
of Austin requires such action. 

 In City of Austin, landowners sued for damages
resulting from inverse condemnation.  570 S.W.2d at 390.  The landowners also
sought an order commanding the City to issue a permit.  Id.  The trial
court ordered the permit issued and awarded damages in the amount of $109,939
for a taking.  Id.  The Texas Supreme Court addressed only the takings
question.  Id.  Although the court reversed and remanded for a retrial
on damages, its decision was based on inadequacy of damages evidence.  Id.
at 395.  However, the court never held that a landowner must seek an injunction
or a writ of mandamus before proceeding with an action for inverse
condemnation.  Indeed, the court noted that following permit denial, the City
of Austin had acquired a scenic easement for which it must pay damages.  Id.
at 394.  There was no further action the supreme court required from the
landowner prior to filing suit.








In City of Austin, the Texas Supreme Court=s disapproval of Kirschke
without noting the continuing viability of the requirement for a writ of
mandamus or injunction is significant.  We doubt the continuing vitality of
that holding in light of City of Austin. Moreover, even if Kirschke
is applicable, the facts of this case are sufficiently distinguishable.  In Kirschke,
the City of Houston denied a permit even though it agreed it had authority to
issue but for its desire to keep the property undeveloped.  330 S.W.2d at 629B30.  The permit
application was rejected because of the possibility that the City would later
condemn  the property in order to build highway infrastructure.  Id. 
The Kirschke court concluded that the proper remedy would be an
injunction or writ of mandamus when a permit has been wrongfully denied.  Id. 
at 634.  Here, the City has absolutely proscribed drilling and vehemently held
to its position that there would be no exceptions under section 23-102.   

III. Conclusion

We hold this case is ripe for
adjudication because Maguire received a final administrative decision from the
City and further action would be futile.  Accordingly, we sustain Maguire=s first issue, reverse the judgment
of the trial court and remand for further proceedings consistent with our
opinion.[3]  


 

 

 

 

 

/s/      Charles Seymore

Justice

 

Judgment rendered
and Substitute Opinion on Rehearing filed October 11, 2007. 

Panel consists of
Chief Justice Hedges, and Justices Seymore and Guzman.

 









[1]  The Texarkana Court of Appeals did not considerCand we will not addressCthe effect of the 1997 amendment on this litigation.  However, under
that amendment, redefining Acontrol area,@ Maguire=s
proposed drill site would be within the area where drilling is absolutely
prohibited.





[2]  In its Motion for Rehearing, the City erroneously
suggests that our opinion is based, in part, on what the Code permitted or
prohibited after suit was filed.





[3]  We do not reach Maguire=s second issue because it is rendered moot by our disposition of the
first issue.