MAGUIRE OIL COMPANY, Maguire Energy Company, Cary M. Maguire, Cary M. Maguire as Manager for the Oil Fund U/I/D 9/1/76, Cary M. Maguire as Trustee for UTD 1/1/83 FBO Cary M. Maguire, Jr., Cary M. Maguire as Trustee UTD 1/1/83 FBO Melinda Ambler Maguire, Cary M. Maguire as Trustee UTD 5/1/84 FBO Ann Blaine Maguire, Don R. Holloway as Custodian of the Matthew Holloway Tugtma, Don R. Holloway as Custodian of the Sarah L. Holloway Tugtma, Don R. Holloway as Custodian of the Barbara Ann Holloway Tugtma, Don R. Holloway as Custodian of the Tillman R. Holloway Tugtma, William N. Collins, Jr. as Custodian of the L. Paige Collins Tugtma, William N. Collins, Jr. as Custodian of the Hattie S. Collins Tugtma, William N. Collins as Custodian of the Chandler Collins Tugtma, Appellants,

v.

The CITY OF HOUSTON, Appellee.

No. 14–05–01272–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 11, 2007.

Rehearing Overruled Jan. 10, 2008.

Donald E. Hermann, Todd William Spake, John Thomas Wilson IV, Fort Worth, James Claiborne Crawford, James M. Lemond, Houston, for appellants.

David Parks Giffith, Frederick D. Junkin, J. Mark Breeding, Paul Stephen Radich, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and GUZMAN.

## SUBSTITUTE OPINION ON REHEARING

CHARLES SEYMORE, Justice.

Appellee's Motion for Rehearing is overruled. We withdraw our opinion issued on July 24, 2007, and we issue this Substitute Opinion.

In this appeal from the grant of a plea to the jurisdiction, Maguire Oil Company, et al. ("Maguire") seeks reversal of a judgment dismissing Maguire's suit against The City of Houston ("the City"). In two issues, Maguire contends: (1) the trial court erred in determining the case was not ripe for adjudication; or alternatively (2) the trial court erred by dismissing Maguire's claims because the City's jurisdictional plea did not implicate Maguire's two alternate theories of recovery—inverse condemnation and physical taking. Because the trial court erred by determining the case was not ripe for adjudication, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We outline the facts in the light most favorable to Maguire, as the non-movant below. Maguire owns substantial mineral

interests around and underneath Lake Houston. In the 1940's, the City acquired surface rights to the land which eventually was inundated with water to form Lake Houston. During 1965, the City adopted an ordinance that generally proscribed pollution. During 1967, the City amended the ordinance to eliminate drilling in or around Lake Houston. In 1977, the City Council amended the definition of "control area" to cover land in its extraterritorial jurisdiction. The ordinance and accompanying definitions that were effective during 1977 are at issue in this case even though the City redefined "control area" in 1997.

In the late 1980's, Maguire began to investigate prospects for a gas well in an area near Houston known as the "Scanlan Deep Prospect," a substantial portion of which lies beneath Lake Houston. Initially, Maguire began to drill outside the city limits. After a vertical well failed, Maguire attempted to drill directionally. This effort also failed. After spending more than three million dollars, Maguire determined that the only feasible location to drill for natural gas in the Scanlan Deep Prospect would be within 1000 feet from Lake Houston. During 1991, Maguire decided to drill a vertical well inside the city limits, approximately 300 feet west of Lake Houston. Accordingly, Maguire filed appropriate documents and requested that the City issue a drilling permit. On May 7, 1991, the City approved a permit to drill at the chosen location. Later, the City ratified and extended that permit. Maguire spent approximately $200,000 building roads, clearing the location, and moving in the rig and equipment. On October 31, 1991, the City issued a stop work order, and revoked the permit pursuant to Houston Code of Ordinances Chapter 23, Article IV section 23–102. As it existed in 1991, Section 23–102 provided:

No well shall be drilled within the control area of Lake Houston which is near-

er than 1,000 feet from the normal water's edge of Lake Houston or any of its drains, streams or tributaries. In addition, no well shall be drilled within such control area at an elevation of less than 48 feet above sea level.

Maguire's multiple proposals to the City's legal, health, planning and development departments, as well as the water-quality director, were rejected. The City's water-quality director steadfastly maintained that the drilling permit would not be issued. All of the City representatives maintained that the ordinance blanketly prohibited drilling in the "control area." All City personnel responsible for enforcement of the ordinance rejected Maguire's attempts to proceed with drilling the previously permitted well. Maguire attempted to communicate with the Mayor, but these efforts were to no avail. Subsequently, Maguire filed suit for inverse condemnation, negligent misrepresentation, and promissory estoppel in the 55th District Court of Harris County.

This civil action has been on a fourteen-year journey bouncing between federal and state courts only to remain unresolved. The City removed the case to the United States District Court for the Southern District of Texas. Subsequently, the federal district court determined it did not have subject matter jurisdiction, and the case was remanded. Following remand to the 55th District Court of Harris County, the court granted the City's motion for summary judgment. Maguire appealed to the Houston courts of appeals. Pursuant to a docket-equalization order, appellate review was assigned to the Texarkana Court of Appeals. That court upheld the trial court's summary judgment in favor of the City relative to Maguire's negligent misrepresentation claim, but reversed and remanded the remaining claims for further

proceedings in the 55th District Court. *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 372 (Tex.App.-Texarkana 2002, pet. denied). Notably, the Texarkana Court of Appeals concluded that section 23–102 did not apply to Maguire's drill site.[1]

In the interim, this court issued *Taub v. Aquila Southwest Pipeline Corp.*, wherein we held that the county civil courts at law have exclusive jurisdiction over condemnation and eminent domain cases. 93 S.W.3d 451, 456 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Following *Taub*, Maguire's inverse condemnation claim was dismissed from district court and re-filed in County Civil Court at Law Number Four ("trial court"). Both parties filed motions for summary judgment. Among its grounds for summary judgment, the City urged that Maguire's takings claim was not ripe. The trial court requested that the City restyle its ripeness challenge as a plea to the jurisdiction and requested briefs. On November 29, 2005, the trial court granted the City's plea to the jurisdiction and dismissed Maguire's entire case. On appeal, this court will answer the limited question whether Maguire's claims are ripe for adjudication.

## II. RIPENESS

██ In its first issue, Maguire contends the trial court erred by determining its suit was not ripe for adjudication. It is well settled that a dispute must be ripe for adjudication before a court may exercise subject matter jurisdiction. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). We review a ripeness determination de novo. *Id.* In context of an inverse condemnation case, the matter is not ripe unless the governmental entity charged with implementing the regulation that allegedly caused the taking has reached a final decision. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *see also Mayhew*, 964 S.W.2d at 928–29 (stating that we look to federal jurisprudence to guide our review of these disputes).

██ A final decision is prerequisite to ripeness in the context of regulatory takings and related constitutional claims. *Mayhew*, 964 S.W.2d at 929. That final and authoritative decision must be "of the type and intensity of development legally permitted on the subject property [because a] court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *Id.* (citation and quotation omitted). Stated differently, we must have sufficient evidence in the record to compare prohibited uses with any permissible uses that may be made with the affected property. *Id.* The final decision requirement ordinarily includes both a rejected proposed use and denial of a variance from controlling regulations. *See id.* However, futile variance requests or re-applications are not necessary. *Id.*

██ It is also important to note the difference between the "final decision" requirement and exhaustion of administrative remedies. The finality requirement concerns whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury whereas the exhaustion requirement generally refers to administrative proce-

---

1. The Texarkana Court of Appeals did not consider—and we will not address—the effect of the 1997 amendment on this litigation. However, under that amendment, redefining "control area," Maguire's proposed drill site would be within the area where drilling is absolutely prohibited.

dures available for review of an adverse decision. *Hamilton Bank,* 473 U.S. at 193, 105 S.Ct. 3108. Thus, it is important not to confuse availability of administrative remedies with the necessity of a final decision. Further, as the *Hamilton Bank* opinion highlights, our focus for purposes of determining whether the governmental entity has reached a final decision is on the procedure and regulations implemented by the entity. *See id.* at 186, 105 S.Ct. 3108.

The City contends Maguire did not receive a final decision because it did not pursue an appeal to the City Council. Maguire counters that it received a final decision, and if further administrative appeals were possible, they would have been futile.

### A. Section 23–102

■ We first address section 23–102 and whether Maguire received a final decision from the proper governmental entity prior to initiating suit.

### 1. The City Council is not the Relevant Decision Maker

It is undisputed that the City contended in all other forums, and contends on appeal, that Chapter 23, Article IV, section 23–102 of the Code of Ordinances prohibits Maguire from drilling its well. Although the City contends Maguire should have proceeded with an appeal to City Council, its argument is unavailing for three reasons: (1) the regulations governing Lake Houston denominate the Director of Public Works and Engineering as the relevant administrative decision maker; (2) the relevant regulations do not contemplate an appeal from permit denial; and (3) even if an appeal were available, not proceeding with any appeal would merely provide the City with an exhaustion of administrative remedies defense. The articles of the Code of Ordinances under Chapter 23 prescribe rules and procedures for appeal that vary from other articles under that chapter. For example, in Article IV, under definitions, the "director" means the director of public works and engineering and his designees. Any person seeking to perform a permitable action under Article IV must obtain a permit from the director. In contrast, Article V, Division 2, section 23–146 expresses that for purposes of Article V, the building official must authorize any permit. Section 23–150 further explains that, under Article V, a permit will issue only after the building official and utility official have given their approval. The differences in procedures for exhausting administrative remedies are even more pronounced between the respective Chapters.

We turn now to the applicable ordinances to identify the relevant decision maker when a party seeks a drilling permit for a site near Lake Houston. Under Section 23–100(2) of Article IV entitled "Water Supply Protection," a "director" is defined as "[t]he director of public works and engineering and his designees." Section 23–104 is the only portion of Article IV that pertains to issuance of a permit. Under that section, the director is the only person with authority to grant a drilling permit. Therefore, the director of public works and engineering is the relevant decision maker.

The record clearly shows that the director rendered a final decision concerning the application of section 23–102. The original permit was revoked and a stop work order was issued. It is further clear that the director was adamantly opposed to issuing any variance or concession that would permit drilling at the proposed site. Consequently, Maguire received a final decision from the relevant decision maker. However, the City argues that an appeal to the City Council is prerequisite to a final decision. Although this argument confuses exhaustion of administrative rem-

edies with obtaining a final administrative decision, we will nevertheless address the City's concerns.

## 2. No Appeal Possible to the City Council

The City argues that Maguire should have appealed under Chapter 31 of the Code of Ordinances. We disagree. Chapter 31–30 contemplates issuance of permits for drilling and operation of a well "not prohibited by the terms of this chapter." Maguire's drilling permit was revoked pursuant to Chapter 23. Therefore, we must refer to that portion of the Code of Ordinances for guidance regarding appeal procedures. Chapter 23, Article IV, section 23–106, provides as follows:

> Permits issued under any provision of this article shall not be transferable. Any refusal by the director to grant any consent or permit *provided for in this article* may be appealed to the city council.

(Emphasis added). That section clearly provides for appeals only if a permit is *provided for* in Article IV. Pursuant to section 23–102, "No well shall be drilled within the control area of Lake Houston.... In addition, no well shall be drilled within such control area...." Roger Hulbert, the City's representative, testified that this provision had consistently been enforced, and there is no procedure for a variance. Therefore, under the City Code, no discretion could be exercised. *See Palazzolo v. Rhode Island,* 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (stating that once it is clear the relevant authority lacks discretion to permit any development, a takings claim is likely to have ripened).

## 3. Maguire not Required to Exhaust Administrative Remedies

Even if an appeal were possible, the City's defense would be predicated on exhaustion of administrative remedies. As we have explained already, resolution of this issue is not based on failure to exhaust administrative remedies. *See Hamilton Bank,* 473 U.S. at 193, 105 S.Ct. 3108 (explaining the difference between a final administrative decision and the exhaustion of administrative remedies). Consequently, an appeal under the provisions of Chapter 31 would not be determinative of ripeness. Interestingly, the City seems to suggest that Maguire should lobby for a new ordinance. Certainly, a lobbying effort was not required to render this dispute ripe for adjudication in our courts.

Nonetheless, Maguire requested and participated in meetings with city administrators. Maguire then unsuccessfully sought meetings with the Mayor, who is a member of City Council. The City promulgated and enforced regulations that foreclosed Maguire from pursuit of any additional administrative remedies. Accordingly, Maguire received a final administrative decision

## B. Chapter 31 and Futile Action

■ The City contends the appeal provisions in Chapter 31 are applicable to the proposed drill site. Thus, the City argues Maguire has not received a final administrative decision. However, during all times material to this appeal, the drilling site contemplated by Maguire was expressly prohibited under Chapter 23, Article IV section 23–102. Accordingly, we have concluded that any further efforts to obtain a permit to drill at the proposed site would be futile. Moreover, relevant to the City's intent prior to the date suit was filed, we note that the City has expanded the scope of Article IV and there is still no provision for a permit under section 23–

102.[2]

According to the City, before a court may determine whether further action is futile, the party seeking a permit must seek variances, submit multiple applications, and pursue numerous attempts to receive a permit. Additionally, the City argues Maguire could identify a different drill site. While those arguments might be valid in other cases, they are not valid in this case.

First, issuance of a permit is proscribed by the City; therefore, seeking a variance would be superfluous. *See Palazzolo*, 533 U.S. at 621, 121 S.Ct. 2448 (noting that an agency's interpretation of regulations to bar a landowner from ever engaging in the proposed activity satisfies the final decision requirement). Second, the law does not require citizens to continuously pursue a permit simply for the exercise. *Id.* at 622, 121 S.Ct. 2448. Finally, Maguire contends there are no other feasible locations for drilling. We must assume Maguire's contention is valid given the procedural posture of this case. *See Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004) (explaining that in an appeal from a plea to the jurisdiction, we apply a standard similar to Texas Rule of Civil Procedure 166a(c) and therefore take as true all evidence favorable to the non-movant). Any further action by Maguire would have been futile and not required under the ripeness doctrine.

## C. Whether Maguire Sought the Proper Remedy

 We also reject the City's contention that Maguire should have sought a writ of mandamus or injunction to force the City to issue the permit in light of Maguire's contention that section 23–102 did not apply to the proposed drill site.

The City cites two cases for this proposition: *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978) and *Kirschke v. City of Houston*, 330 S.W.2d 629 (Tex.Civ.App.-Houston 1959, writ ref'd. n.r.e.) *disapproved by City of Austin*, 570 S.W.2d at 394. We agree with the City that *Kirschke* seems to require pursuit of a writ of mandamus or an injunction. However, we do not agree that *Kirschke* is controlling authority. Moreover, we disagree with the City's contention that *City of Austin* requires such action.

In *City of Austin*, landowners sued for damages resulting from inverse condemnation. 570 S.W.2d at 390. The landowners also sought an order commanding the City to issue a permit. *Id.* The trial court ordered the permit issued and awarded damages in the amount of $109,939 for a taking. *Id.* The Texas Supreme Court addressed only the takings question. *Id.* Although the court reversed and remanded for a retrial on damages, its decision was based on inadequacy of damages evidence. *Id.* at 395. The court never held that a landowner must seek an injunction or a writ of mandamus before proceeding with an action for inverse condemnation. Indeed, the court noted that following permit denial, the City of Austin had acquired a scenic easement for which it must pay damages. *Id.* at 394. There was no further action the supreme court required from the landowner prior to filing suit.

In *City of Austin*, the Texas Supreme Court's disapproval of *Kirschke* without noting the continuing viability of the requirement for a writ of mandamus or injunction is significant. We doubt the continuing vitality of the *Kirschke* holding in light of *City of Austin*. Moreover, even if *Kirschke* is applicable, the facts of this case are sufficiently distinguishable. In *Kirschke*, the City of Houston denied a

---

**2.** In its Motion for Rehearing, the City erroneously suggests that our opinion is based, in part, on what the Code permitted or prohibited after suit was filed.

permit even though it agreed it had authority to issue but for its desire to keep the property undeveloped. 330 S.W.2d at 629–30. The permit application was rejected because of the possibility that the City would later condemn the property in order to build highway infrastructure. *Id.* The *Kirschke* court concluded that the proper remedy would be an injunction or writ of mandamus when a permit has been wrongfully denied. *Id.* at 634. Here, the City has absolutely proscribed drilling and vehemently held to its position that there would be no exceptions under section 23–102.

### III. CONCLUSION

We hold this case is ripe for adjudication because Maguire received a final administrative decision from the City and further action would be futile. Accordingly, we sustain Maguire's first issue, reverse the judgment of the trial court, and remand for further proceedings consistent with our opinion.[3]

---

**3.** We do not reach Maguire's second issue because it is rendered moot by our disposition of the first issue.