**TRAIL ENTERPRISES, INC. d/b/a Wilson Oil Company, Thomas G. Rogers, Catherine Baumann, Carolyn Whipple, Mrs. S. Kelley Bruce, John Hobbs Kelley, Mary Virginia Kelly Ingram, Daystar Oil and Gas Corporation, John Alexander, Rebecca Bruce Jones, Eleanor Bruce McReynolds, Robert D. Bruce, and Intervenor, Mary Bruce, Appellants,**

v.

**The CITY OF HOUSTON, Appellee.**

**No. 10–05–00382–CV.**

Court of Appeals of Texas, Waco.

Nov. 21, 2007.

Opinion Withdrawing Judgment on Rehearing April 9, 2008.

Philip E. McCleery, Sheehy, Lovelace & Mayfield PC, Waco, Stephen E. McCleery, Houston, for appellants.

J. Mark Breeding, Andrew & Kurth LLP, Elizabeth L. Stevens, City of Houston Legal Dept., Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This appeal concerns Trail Enterprises' inverse-condemnation claim against the City of Houston for an ordinance prohibiting oil drilling on Trail's property near Lake Houston. "An inverse condemnation occurs when property is taken for public use without process or without proper condemnation proceedings, and the property

owner attempts to recover compensation therefor." *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 614 (Tex.App.-Waco 2001), *aff'd*, 151 S.W.3d 546 (Tex.2004); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 17. The trial court initially found the City liable on Trail's takings claim, and a jury determined the amount of Trail's damages. Thereafter, the trial court determined that Trail's claims were not ripe and dismissed the claims for want of jurisdiction. Trail appeals. We reverse and render.

■ *Motions for Summary Judgment.* Most of Trail's issues concern the trial court's jurisdiction. In Trail's fourth and fifth issues, it contends that the trial court erred in granting the City's motions for summary judgment, which were premised upon the lack of jurisdiction. In Trail's seventh issue, Trail contends that the trial court erred in overruling Trail's motion for summary judgment on jurisdiction. In Trail's first three issues, it contends that the trial court erred in rendering judgment dismissing Trail's cause for lack of jurisdiction.

■ The parties' motions for summary judgment concern whether Trail's claims were ripe, specifically whether Trail exhausted its remedies within the City. "Ripeness is an element of subject matter jurisdiction." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *accord McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 231 (Tex.2001); *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850, 851 (Tex.2000). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Gibson* at 852. However, "futile variance requests or re-applications are not required" in order for a regulatory takings claim to be ripe. *Mayhew* at 929. Moreover, where an ordi-

nance "prohibit[s] precisely the use" the property owner "intended to make of th[e] property, and nothing in the ordinance suggest[s] any exceptions would be made," the owner's "taking claim [i]s ripe upon enactment" of the ordinance "because at that moment the 'permissible uses of the property [are] known to a reasonable degree of certainty.'" *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 60 (Tex. 2006) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)).

The City's motion raised two grounds: that Trail's claim was not ripe, *see* TEX.R. CIV. P. 166a(c), and that there was no evidence that Trail's claim was ripe, *see* TEX.R. CIV. P. 166a(i). In Trail's motion for summary judgment, it contended that its claim was ripe upon enactment of the ordinance.

■ In a traditional summary-judgment motion, "[t]he judgment sought shall be rendered forthwith if" the summary-judgment evidence "show[s] that ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law...." TEX.R. CIV. P. 166a(c). In a no-evidence summary-judgment motion, "[t]he court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* 166a(i). "The reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex.2004); *accord Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judg-

ment the trial court should have rendered." *Patient Advocates* at 648; *accord FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

In the City's traditional motion, the City moved for summary judgment on the ground that Trail's "takings claim lack[ed] the necessary predicate of the denial of a drilling permit and the exhaustion of administrative remedies." (III C.R. at 939.) In the City's no-evidence motion, the City moved for summary judgment on the ground that there was "no evidence that [Trail] applied for and w[as] denied a drilling permit or otherwise exhausted [its] administrative remedies prior to initiating th[e] lawsuit." (*Id.* at 940.) In Trail's response to the City's no-evidence motion, Trail argued that it "d[id] not need to produce evidence of a permit application," and it did not.[1] (*Id.* at 1069; *see* Trail Br. at 12.) Trail "concede[d] that no formal application was filed on [its] behalf with [the City] to obtain a permit to drill wells on [Trail's] mineral properties." (III C.R. at 1058.) Rather, Trail argues that such an application would have been futile: Trail's "claims were ripe, as a matter of law, upon the City's passage of" the ordinance and Trail "is not required to produce evidence on this element." (Br. at 18.) In Trail's motion, Trail argued that the ordinance does not provide for a variance from its prohibition.

■ Trail's claims were ripe upon enactment of the ordinance. The trial court erred in holding that Trail's claims were not ripe and that the court thus lacked jurisdiction. We sustain Trail's first, second, third, fourth, fifth, and seventh is-

sues.[2] The trial court's judgment dated August 29, 2005, will be reversed.

*Motion for Judgment.* Trail's sixth issue contends that the trial court erred in overruling Trail's motions for judgment. Trail argues that judgment should now be rendered for Trail on the finding of liability and the jury's determination of damages. We have concluded that the court erred in holding that Trail's claims were not ripe. Thus, we also sustain the sixth issue. The judgment appealed from, signed on August 29, 2005, recites the history of the litigation and, prior to addressing the ripeness issue, states:

The Court, based upon its findings and determination that an inverse condemnation occurred in this case on November 5, 1997, and based upon the stipulations of the parties and the jury verdict on the difference in market value of the property, was of the opinion that Plaintiffs were entitled to recover from Defendant $16,849,099.37 plus pre-judgment interest at the rate of 5.0% per annum from November 5, 1997, until date of judgment. The final judgment is incorporated for all purposes by reference.

After entry of judgment based upon the Jury Trial Verdict, the City filed a Motion for New Trial and urged that the cause was not ripe and should be denied for want of jurisdiction.

The Court then sustained the City's motion on the ripeness issue and dismissed the case, without prejudice, for lack of jurisdiction.

The parties agree that neither a "final judgment" nor a "motion for new trial"

---

1. Trail suggests on appeal that the ripeness doctrine should not apply to mineral interests. The ripeness doctrine applies to mineral interests. *See City of Anson v. Harper,* No. 11–05–00398–CV, 216 S.W.3d 384, 389–91 (Tex. App.-Eastland 2006, no pet.).

2. The opinion to this point was written by Chief Justice Gray. When a majority voted to render judgment, the undersigned became the author.

described by the August 29, 2005, judgment quoted above was filed. Accordingly, we requested that the parties submit their proposed judgments for our consideration. We will render judgment for Trail.

**Conclusion.** We have sustained all of Trail's issues. We will reverse the trial court's judgment and, based on the trial court's finding that an inverse condemnation occurred,[3] the stipulations of the parties, and the jury's verdict, render judgment[4] that:

1. Plaintiffs have and recover of and from the City of Houston the sum of SIXTEEN MILLION EIGHT HUNDRED FORTY–NINE THOUSAND NINTY–NINE AND 37/100 DOLLARS ($16,849,099.37), together with pre-judgment interest thereon at the rate of 5% per annum from November 5, 1997, to date of this judgment, and post-judgment interest at the maximum rate provided by law from the date of this judgment until paid;

2. The City of Houston have and recover of and from Plaintiffs as of November 5, 1997, all of Plaintiffs' right, title, and interest in and to all of the oil, gas, and other minerals in and under 1,025 acres of land in Harris County, Texas, and being described as three tracts of 885 acres, 100 acres, and 40 acres, respectively, in Exhibit "A" attached to the judgment, which descriptions are incorporated herein for all purposes, the interests of the respective Plaintiffs being shown in Exhibits "B" and "C" attached to the judgment and being 88.46204 per cent of the mineral interests underlying the above described land according to the par-

ties' Stipulation appearing at Volume IV, Page 1166 of the Clerk's Record in this cause;

3. The City of Houston is entitled to credit against the judgment granted herein for sums received by the Plaintiffs since the date of taking, November 5, 1997, on their respective interests set forth in Stipulations of the parties appearing at Volume IV, Page 1192 of the Clerk's Record in this cause; and

4. The City of Houston pay all costs of this proceeding, including costs incurred in the trial court and in this court.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

This dissenting opinion draws into sharp focus the distinction between an appellate court's opinion and its judgment. The draft opinion, first placed in circulation on July 13, 2007, was rejected by a majority of the Court, not because of the opinion, but because of the judgment. The proposed judgment was to remand the proceeding to the trial court.

Since that date Justice Vance has struggled valiantly to draft a judgment that will properly render the appeal from the information in the record before this Court. Justice Vance even requested both parties to propose a judgment. All this effort, and its attendant delay, has not resulted in a judgment the Court feels comfortable with. The judgment needed in this proceeding is very complex and we do not have the information needed to do it. In recognition of this, and the probability that the Court's judgment is not entirely accurate

---

3. The trial court instructed the jury that a "taking" had occurred on November 5, 1997.

4. If any party believes that the judgment we render should be modified or corrected, we invite a motion for rehearing to that effect.

or complete, the Court invites the parties to file a motion for rehearing to inform the Court regarding needed modification or corrections. Maj. Op. at pg. 110, fn. 4. This should be enough to inform the Court that we should not attempt to render judgment in this appeal.

Further, because the trial court judgment being reviewed was a post-jury trial, prejudgment, grant of a plea to the jurisdiction, I simply do not know what other issues may have been left pending and that are now appropriate for the trial court's initial consideration that were not a proper subject for this appeal.[1] Thus, the procedural posture of the proceeding, in my opinion, necessitates a remand so the trial court can deal with those unresolved issues.

I do not know why the Court has, in this instance, struggled so to render a judgment rather than remand the proceeding. The complexities of the judgment needed to resolve this dispute and the uncertainties of what is not available to us leave no doubt in my mind that the proper judgment for this Court to render is a judgment which remands the proceeding to the trial court for further proceedings.

I therefore respectfully dissent from the Court's judgment.

---

1. There are several issues that were not resolved due, in part, to the procedural posture in which this proceeding is being decided. In this regulatory taking case, the charge submitted to the jury leaves open the question of whether it was a total taking (denied the owner of all economically viable use of their property) and, if not, whether it substantially interfered with Trail's rights to use and enjoy its property. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex.1998). Also unresolved is the question of whether the accommodation doctrine would apply to a "regulatory use" of the surface and thus would require an evaluation of other alternatives to direct drilling. *See Texas Genco, L.P. v. Va-*

## OPINION ON REHEARING

BILL VANCE, Justice.

This appeal concerns Trail Enterprises' inverse-condemnation claim against the City of Houston. After we issued an opinion and judgment on November 21, 2007, both Trail and the City filed a motion for rehearing. We requested a response to each motion from the other party and now have both motions before us.

## THE ALLEGATIONS

The City asserts four "grounds" for rehearing: (1) our reliance on *Hallco Texas, Inc. v. McMullen County*[1] is misplaced; (2) *Mayhew v. Town of Sunnyvale*[2] requires that Appellants show a rejected development plan and a denial of a variance from the controlling regulation; (3) a remand rather than rendition of judgment is the proper remedy because the exception for cross-motions for summary judgment is not presented; and (4) the trial court had not resolved the issue of liability prior to entering judgment on the ripeness question, and the City will be denied its post-trial remedies.

Trail asserts two "issues" on rehearing: (1) although we correctly reversed the trial court's judgment and rendered judgment for Trail, the judgment incorrectly awarded the City title to the oil and gas interests

---

*lence Operating Co.*, 187 S.W.3d 118, 121–122 (Tex.App.-Waco 2006, pet. denied); *see also Maguire Oil Co. v. City of Houston*, 243 S.W.3d 714 (Tex.App.-Houston [14th Dist.] 2007, no pet. h.) (horizontal drilling in same area unsuccessful). Because the trial court erroneously determined it had no jurisdiction, these issues, and a plethora of other issues, were not presented to us for resolution and could impact the judgment that should ultimately be rendered.

1. 221 S.W.3d 50 (Tex.2006).

2. 964 S.W.2d 922 (Tex.1988).

owned by Trail;[3] and (2) we erroneously allowed the City credit for sums received by Trail from their respective interests since November 5, 1997.

We will address the parties' contentions in turn.

## THE CITY'S MOTION

The City's first two grounds urge reconsideration of our holding that the City is liable for an inverse condemnation. Our decision on that issue was unanimous, and we will not revisit it. *See also Maguire Oil Co. v. City of Houston,* 243 S.W.3d 714, (Tex.App.-Houston [14th Dist.] 2007, no pet. h.). Grounds one and two are overruled.

The City's third and fourth grounds urge a remand for further trial court proceedings rather than a rendition of judgment. Rule of Appellate Procedure 43.3 requires us to "render the judgment that the trial court should have rendered" unless a remand is necessary for further proceedings or the interests of justice require a remand. Tex.R.App. P. 43.3. We believe neither exception is present in this case.

The City's third ground is premised on the notion that we were reviewing competing motions for summary judgment. However, both parties filed post-trial motions that were considered by the trial court. Trail says the cases cited by the City have no application because there has been a trial on the merits and points to the recitations in the trial court's judgment, entered more than five months after the jury trial. Those recitations show that the court considered:

- The City's Motions for Summary Judgment;

- Trail's Response to the City's Motions for Summary Judgment/Plea to the Jurisdiction;

- Trail's Cross–Motion for Summary Judgment as to Jurisdiction;

- Trail's Motion to Reconsider the Court's Order Granting Reconsideration of the Court's Holding of a Taking; and

- Trail's Second Motion for Entry of Judgment.

The judgment also recites: "The Court further found that enactment of Ordinance 97–1394 on November 5, 1997, by the City of Houston, resulted in an inverse condemnation of Plaintiff's property interest under Article I, § 17 of the Constitution of the State of Texas." After stating the jury's findings, the judgment addresses the City's ripeness argument, finds in favor of the City, and dismisses the case without prejudice for lack of jurisdiction.

We determined that the trial court erred in finding the claims not to be ripe, then we assessed whether or not Trail was entitled to judgment on the jury's verdict. We determined that it was. Typically, when an order granting a summary judgment is reversed on appeal, the case is remanded for a trial. Here, the trial has occurred. We overrule ground three.

Ground four asserts that a remand is necessary for additional proceedings in the trial court, *i.e.,* a final determination by the trial court on the issue of a taking and post-trial remedies available to the City. Trail again responds that the trial court's judgment recites that it had found that the ordinance "resulted in an inverse condemnation" of Trail's interests. Further, it says that all of the City's post-trial remedies were available.

3. We refer to all of the Appellants collectively as "Trail," as we did in our original opinion.

■ We believe that the City's post-trial motion reasserting the ripeness question, described above, should be treated the same as a motion for judgment notwithstanding the verdict. Appellate Rule 38.2(b) requires that an appellee faced with an appeal from the grant of a motion for judgment n.o.v. "bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict." TEX.R.APP. P. 38.2(b). Failure to bring such a cross-point "waives that complaint." *Id.* The City has waived its complaints about the verdict. We overrule ground four.

## TRAIL'S MOTION

■ In arguing its first issue concerning title, Trail reviews the language of the Final Judgment, the history of the litigation, the pleadings of the parties, and the trial court's determination of an inverse condemnation to conclude that only the right of reasonable access was inversely condemned by the City. Trail further points out that the City has never contended that it should be awarded fee simple title to all of Trail's oil and gas interests. The City urges that a judgment that does not grant title to the City will result in a "windfall" to Trail because it may well be able to further develop its mineral interests in the future. The City further points to the fact that Trail told the trial court that the City had "effectively tak[en]" the mineral estates and sought compensation because the mineral rights had been "rendered valueless."

The parties remain poles apart on this issue. Neither has suggested alternate language to that used in our judgment. Thus, our question is: what interest, if any, should be awarded to the City as a result of the payment of damages awarded in this inverse condemnation suit? [4]

■ The Texas Constitution prohibits three distinct types of "takings" without adequate compensation: (1) taking, (2) damaging, and (3) destroying property. *City of Dallas v. Jennings,* 142 S.W.3d 310, 313 n. 2 (Tex.2004). In *Hallco,* the Supreme Court observed:

> A regulation that deprives a property owner of all economically beneficial or productive use of the property "makes the regulation categorically a taking." [Citation omitted.] Lesser interferences, however, may also result in a taking. These types of regulatory actions require an "essentially ad hoc, factual inquir[y]. . . ."

*Hallco Texas, Inc. v. McMullen County,* 221 S.W.3d 50, 56 (Tex.2007) (quoting *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). Here, the ordinance did not deprive Trail of "all economically beneficial or productive use of the property," as evidenced by Trail's continued receipt of royalty payments after the date the ordinance was adopted.

The issue submitted to the jury, *i.e.,* the difference in market value before and after the imposition of the ordinance, also contemplated a "damaging" of Trail's interests rather than a "taking." The trial court's characterization as a "taking" is not necessarily determinative. *Tarrant County Water Control & Imp. Dist. No. 1 v. Reid,* 203 S.W.2d 290, 293 (Tex.Civ.App.-Fort Worth 1947, writ ref'd n.r.e.) ("The great

---

4. Although not directly applicable, we note that section 21.045 provides that, except where otherwise provided by law, the interest acquired by a condemnor in an eminent domain proceeding under chapter 21 does not include fee simple title. TEX. PROP.CODE ANN. § 21.045 (Vernon 2000).

weight of authority holds that where the owner's land which has been damaged is abutting to the land occupied by the project and/or is so situated with reference to the project that such owner's land suffers from injury by reason of the operation of the project, that a claim for such injury becomes one of 'damage' rather than of 'taking.'"); *see also McCammon & Lang Lumber Co. v. Trinity & B.V. Ry.*, 104 Tex. 8, 133 S.W. 247, 248 (1911) (distinction between taking and damaging is provided in Art. 1, § 17 of the Constitution); *Queen City Land Co. v. State*, 601 S.W.2d 527, 528 (Tex. Civ. App–Austin 1980, writ ref'd n.r.e.) (court erred in vesting fee simple title, as the petition in condemnation sought only an easement in and to the tract); *City of Houston v. Hamons*, 496 S.W.2d 662, 665 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (determining to take the fee title to the defendants' property, rather than an easement, is subject to judicial review for 'palpable abuse' of the City's eminent domain power; City did not need and had no intention to use surface rights when air rights easement would serve the public purpose of the condemnation); *Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex.Civ.App.-Tyler 1969, writ ref'd n.r.e.) (some affirmative expression of a desire to condemn a fee must be made, either in the order of condemnation or by some other official act or order properly enacted by the governing body); *Burgess v. City and County of Dallas Levee Imp. Dist.*, 155 S.W.2d 402, 403 (Tex.Civ.App.-Eastland 1941, writ ref'd w.o.m.) ("The general rule is that the nature of the estate in lands, constituting the subject matter upon which the power of eminent domain operates, is that of an easement.").

Extrapolating from these principles, we believe that Trail is correct in its assertion that the City is not entitled to fee simple title to interests that it has "damaged" but not "taken." Accordingly, we will withdraw our judgment and issue a corrected judgment.

In *Tarrant Regional Water Dist. v. Gragg,* the trial court "awarded the District a permanent and perpetual flowage easement over the property" based on the trial court's finding that an inverse condemnation had occurred on a specific date and jury findings of market value immediately before and immediately after the condemnation. *Tarrant Regional Water Dist. v. Gragg*, 151 S.W.3d 546, 550 (Tex. 2004) (describing easement); *Tarrant Regional Water Dist. v. Gragg*, 43 S.W.3d 609, 613 (Tex.App.-Waco 2001) (describing the "date of taking" and the easement), *aff'd,* 151 S.W.3d 546 (Tex.2004). Here, however, it is Ordinance 97–1394 enacted by the City that restricts Trail's ability to enjoy the full benefits or productive use of its interests. As far as the record shows, that Ordinance remains in effect, and control of Trail's access to its mineral interests effectively rests in the City's hands. Thus, we find that an award of an interest in Trail's property is not justified and should not be made. Trail's first rehearing issue is sustained.

■■■ Trail's second issue addresses the credit we gave the City for sums received by Trail on its interests after the date of inverse condemnation by the ordinance. The City's response does not address this issue. For the same reasons expressed above concerning no award of an interest in the property, we agree with Trail. Thus, Trail's second rehearing issue is sustained and our corrected judgment will delete the credit.

## CONCLUSION

We have overruled the City's grounds for rehearing and sustained Trail's issues. Trail's motion for rehearing is granted.

Tex.R.App. P. 49.3. Our judgment dated November 21, 2007, is withdrawn. Without further briefing or oral argument, we again sustain Trail's original issues one through six, reverse the trial court's judgment, and based on the trial court's finding that an inverse condemnation occurred and on the jury's verdict, render judgment that:

1. Plaintiffs have and recover of and from the City of Houston the sum of SIXTEEN MILLION EIGHT HUNDRED FORTY–NINE THOUSAND NINETY–NINE AND 37/100 DOLLARS ($16,849,-099.37), together with pre-judgment interest thereon at the rate of 5% per annum from November 5, 1997, to date of this judgment, and post-judgment interest at the maximum rate provided by law from the date of this judgment until paid; and

2. The City of Houston pay all costs of this proceeding, including costs incurred in the trial court and in this court.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissent to opinion on rehearing.

The majority's original judgment must be withdrawn so that it can be "corrected." As noted in my original dissenting opinion, the original judgment was demonstrably wrong. *Trail Enters. v. City of Houston,* No. 10–05–00382–CV, 2007 WL 4157244, at *4, 2007 Tex.App. LEXIS 9199, *9–12 (Tex.App.-Waco Nov. 21, 2007, no pet. h.) (Gray, C.J., dissenting). And while some of the errors may have been corrected, the opinion on rehearing only confirms for me that the better course for addressing the issues that were not resolved due to the trial court's determination that it had no jurisdiction is to remand this proceeding to the trial court. In this regard, I do not see how the City could have been expected, must less required, to complain on appeal about the trial court's initial determination that there was a taking when the subsequent determination by the trial court that it had no jurisdiction was a determination that impliedly, if not expressly, set aside the initial determination and held that a taking had not yet occurred, thus depriving the court of jurisdiction.[1] Likewise, I am concerned about how the City was to engage in any meaningful post-judgment practice when the only judgment ever rendered by the trial court was that it did not have jurisdiction—a victory for the City.[2]

The majority's opinion on rehearing and corrected judgment, if correct, must be read as holding that on the record in this regulatory taking case, the City did not deprive Trail of all economically viable use of the property and, therefore, the City's regulation did not result in a compensable taking under one of the applicable tests.[3]

---

1. The majority uses the magic phrase on page 4 of its opinion that a pleading should "be treated" as something else. All types of alarm bells should sound when a reader sees these words in an opinion. I am not saying that it is always wrong for a document to "be treated" as something else. But when used properly, it is usually done to save a party from an improperly labeled document.

2. As to grounds one and two in the City's motion for rehearing, the majority skips over them noting that we were unanimous in our prior rulings on those issues. I pause only to note that this is a red herring. We have been unanimously wrong before, so that is not justification for not addressing those issues.

3. The majority confuses taking or damage with a compensable taking by assuming that all takings and all damages are compensable. They are not. The trial court determined there had been a taking. But in this regulatory taking case, the question remains whether it was a *compensable* taking or, in the lan-

*See Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660 (Tex.2004). The fact that Trail continues to receive royalties from production and sale of oil and gas from the property establishes that some economic value for its interest therein was retained by Trail.

The question remains, however, whether the regulation was a compensable taking under the other applicable test; did it unreasonably interfere with Trail's investment-backed expectation?[4] It does not appear to me from the record in this proceeding that this question has been developed or resolved. As argued by Trail in its motion for rehearing, the jury verdict is only the difference in the value of minerals before and after the regulation. It was not determined if this was an unreasonable interference as defined by *Sheffield* and *Mayhew. Sheffield,* 140 S.W.3d at 677–679; *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 935–936 (Tex.1998).

I could spend much more time in the "sophistic Miltonian Bog" like I did in *Sheffield* but I know that it is not left to me to define what constitutes an island. *See Sheffield,* 140 S.W.3d at 671. It is sufficient for my purposes to note that neither the trial court, nor a majority of this Court, has gone through the rigorous analysis required by *Sheffield* to decide the fact issues and then to weigh and balance the factors in determining if there has been an unreasonable interference with "Trail's" (actually this must be done as to each individual plaintiff) investment-backed expectation. This analysis cannot be done, and is not dependent, only upon the jury finding of the amount of the reduction in value of Trail's investment as a result of the regulation on drilling.

Thus, my disagreement with the majority's refusal to remand this proceeding spills over to some extent from the purely jurisdictional question to the question they implicitly decided by rendering judgment; whether this was a regulatory taking in the constitutional sense of the magnitude requiring compensation. As I spend more time with the record, and whatever time I can devote to it is minimal compared to the decade that the litigants have been dealing with it, I am more concerned about how the taxpayers, that would be the City of Houston, were to frame the issues in this appeal as it relates to issues that I believe should be addressed on remand.

Of course, the City of Houston had no way of knowing when this case was appealed that it would be transferred to this Court via a docket equalization order. It may have made a lot more sense to ask that it be directed to the 14th Court of Appeals to which the two prior appeals were taken. *See Trail Enters. v. City of Houston,* No. 14–01–00441–CV, 2002 WL 389448, 2002 Tex.App. LEXIS 1872 (Tex. App.-Houston [14th Dist.] March 14, 2002, no pet.) (opinion); *Trail Enters. v. City of Houston,* 957 S.W.2d 625 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). But it was not. Further, and more importantly, there was no way the City of Houston could have reasonably anticipated that anything other than the jurisdictional issue would be resolved in this appeal as other issues were clearly left unresolved in the trial court due to the trial court's ruling on jurisdiction. How was the City of Houston to anticipate that a majority of the Court would treat a motion for judgment on damages the same as a cross-motion for summary judgment on the whole case and use the cross-motion theory to then dispose of

guage of the majority, compensable "damage."

4. I do not address the third test discussed in *Sheffield,* that the regulation "did not substantially advance the City's legitimate interest."

the entire proceeding? Under that analysis, even if it could apply, the "cross-motions" must be on the same issue. In this proceeding, one motion for summary judgment was on jurisdiction and the other motion, which is being treated as a motion for summary judgment, was for judgment on a jury verdict.

In the context in which the trial court was deciding the jurisdictional issue, there are some troubling issues remaining that I also do not believe were fully developed for and decided by the trial court. At this point, I must briefly digress to the facts of the case. There are multiple mineral interest owners involved in this proceeding. Some of them acquired their interest prior to an earlier ordinance that prevented drilling in the area. Those mineral owners subsequently sued the city for the effect of that ordinance when a drilling permit was denied and lost because they had not timely pursued their takings claim as to the effect of the ordinance. But then the area was annexed and after the City modified the ordinance, they contend that under the new ordinance, they are once again being prohibited from drilling.

Other owners of the mineral interest included in the label "Trail" acquired their interest (in 2002) after the new ordinance was in effect and with a full understanding of the ordinance's potential impact on their ability to drill new wells. Nevertheless, they were willing to purchase an interest. Why? Because there are producing wells on the property that they believed could be made even more productive. Thus, this purchase and their development plan using existing wells cuts strongly against the argument that the regulation deprived the owners of all economic value (they were able to sell a partial interest), or unreasonably deprived the owners of their investment-backed expectations. And in case I failed to mention, these old wells appear to have been productive throughout this entire period; note the majority's "correction" of the judgment for the credit they had previously allowed to the City for this production.

There also remains the issue of whether there is any location on the lease from which new wells can be drilled that are outside the area subject to the drilling restriction. This is the specific argument made by the City, which they argued must be decided first, to determine if the trial court has jurisdiction. Their argument is that until a permit for a specific location is applied for and rejected, the taking claim is not ripe for decision. But now remember what happened in *Trail I,* in which the City prevailed on a limitations defense because the taking under the prior ordinance was not tested until after a specific application had been rejected, and you understand why Trail does not now simply make an application for a permit and proceed from there. *See Trail Enters. v. City of Houston,* 957 S.W.2d 625 (Tex.App.-Houston [14th Dist.] 1997, pet. denied).

Additionally, based on Trail's evidence and the jury's answer to the damages question, roughly one-third of the value of the property remains. But this is based on the "developed" value. If we are to compare the remaining value absent any development, in essence the market value after the alleged taking by the regulations, to the owner's investment in the property to determine the extent of the interference with their investment, which is the comparison made by the Supreme Court in *Sheffield,* we need a lot more information before we can hold there was a compensable taking because it appears the value after the ordinance was passed far exceeds the cost of the investment when it was originally made. *Sheffield,* 140 S.W.3d at 677–679. And if we are to render the judgment on this record, based on what

the trial court "should have" rendered, I would have to deny Trail recovery because they have failed to establish the extent of the interference with their investment because they have not established what that investment was as to each plaintiff.

One reason I believe that the jurisdictional issue of permit-application-and-denial was not more clearly developed by the City until after trial is that Trail's valuation/damages model is based on an intensive and comprehensive drilling plan, not just one or two wells. This was clear from the development proposals presented by Trail's experts. It was not until trial that the intensity of those drilling proposals was fully presented and considered in light of the developing case law and that it was realized that some restrictions, reasonable restrictions, on the placement of wells would not necessarily deny the owners all access to their minerals (to say nothing of the wells already drilled and producing).

If Trail submitted a development plan comparable to those presented at trial by their experts, and upon which the difference-in-value damages were based, there is little question that the plan, as presented, would be prohibited by the City ordinance. But that alone does not constitute a compensable taking, nor does it take the presentation of that plan and having it rejected to give the trial court jurisdiction. And while I note that Trail used this aggressive and comprehensive drilling plan to determine value, unlike the developer in *Mayhew*, I found no support that absent the regulation Trail actually planned to engage in that comprehensive development plan.

It is the coming together of all of these issues and the need to resolve them in a more logical sequence that causes me to know that, at the very least, this proceeding should be remanded. While I could spend a good deal more of my life sorting out some of these nagging questions, a majority of the Court has reached their decision and I have been unable to persuade them of my position. Thus, rather than follow every issue out to its proper conclusion, I will yield to a more timely result, note my dissent, and leave it to the parties to convince the next court, or the next, that we are all wrong and this proceeding is not ripe for a takings claim, or that we are correct in that determination as to ripeness, but that there are other issues that need to be resolved by the trial court upon proper development and in a proper sequence to obtain judicial review, thus warranting a remand of the proceeding.

Based on the foregoing, I continue to believe that a remand for further proceedings is the proper judgment and must, therefore, respectfully continue to dissent to the majority's judgment that does not remand this proceeding to the trial court; thus, I note my dissent to the opinion on rehearing and the corrected judgment.